Timothy M. McCarthy, Esq. (ID No. 125812014)
Harrison H. Weimer, Esq. (*pro hac vice* forthcoming)
**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, Pennsylvania 19102
Timothy.McCarthy@jacksonlewis.com
Harrison.Weimer@jacksonlewis.com
(267) 319-7802
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NICOLE NELLIGAN, | : | Civil Action No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **NOTICE AND PETITION FOR** |
| | : | **REMOVAL OF CASE FROM THE** |
| CROSS COUNTRY HEALTHCARE, INC.; | : | **SUPERIOR COURT OF NEW JERSEY,** |
| CROSS COUNTRY STAFFING, INC.; | : | **LAW DIVISION, OCEAN COUNTY** |
| LINDA MURPHY; LEYLA DEIDA; ABC | : | |
| COMPANIES 1-5 (fictitious names | : | |
| describing presently unidentified business | : | |
| entities); and JOHN DOES 1-5 (fictitious | : | |
| names of unidentified individuals), | : | |
| | | |
| Defendants. | | |

TO:   Melissa E. Rhoads, Clerk of Court
      United States District Court for the District of New Jersey
      Mitchell H. Cohen Building & U.S. Courthouse
      4th & Cooper Streets
      Camden, NJ 08101

      Matthew A. Luber, Esq.
      Natalie M. LaRosa, Esq.
      McOmber McOmber & Luber, P.C
      50 Lake Center Drive, Suite 400
      Marlton, NJ 08053

Defendants Cross Country Healthcare, Inc. ("Defendant CC Healthcare"), Cross Country

Staffing, Inc. ("Defendant CC Staffing"), Linda Murphy ("Defendant Murphy"), and Leyla Deida

1

("Defendant Deida") (collectively, "Defendants"), by and through their attorneys of record, Jackson Lewis P.C., hereby remove the action captioned <u>Nicole Nelligan v. Cross Country Healthcare Inc., et al.,</u> filed by Plaintiff Nicole Nelligan ("Plaintiff"), bearing Docket Number OCN-L-002625-25 and currently pending in the Superior Court of New Jersey, Law Division, Ocean County (the "State Court Action"), to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  The grounds for removal are as follows:

1.      On September 25, 2025, Plaintiff commenced the State Court Action by filing a Complaint seeking damages allegedly resulting from pregnancy discrimination, retaliation, and interference in violation of the New Jersey Law Against Discrimination ("NJLAD") and New Jersey Family Leave Act ("NJFLA"), pending in the Superior Court of New Jersey, Law Division, Ocean County.  A copy of the Complaint is attached hereto as **Exhibit A**.

2.      On October 21, 2025 Plaintiff served a copy of the Complaint. A true and correct copy of Defendant's Acknowledgment of Service is attached hereto as **Exhibit B**.

3.      These documents constitute all pleadings provided to Defendants in this action.

4.      To date, Defendants have not filed any pleadings with the State Court, including any response to the Complaint, which is currently due to be filed on or before November 25, 2025.

5.      Defendants are entitled to remove the State Court Action to this Court pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants.

6.      Pursuant to 28 U.S.C. § 1446(b)(3), this Notice of Removal was timely filed before November 20, 2025 and within thirty (30) days after it may be first ascertained that the case is one which is or has become removable, as Defendants accepted service of the Complaint on October

21, 2025.

7.      As set forth in the Complaint, Plaintiff is and has been, both upon the filing of the subject Complaint and the filing of this petition for removal, a citizen and resident of Manahawkin, Ocean County, New Jersey.

8.      Defendant CC Healthcare is and has been, both upon the filing of the subject Complaint and the filing of this petition for removal, a Delaware corporation with its principal place of business in Florida. See 28 U.S.C. § 1332(c)(1).

9.      Defendant CC Staffing is and has been, both upon the filing of the subject Complaint and the filing of this petition for removal, a Delaware corporation with its principal place of business in Florida. See 28 U.S.C. § 1332(c)(1).

10.      Defendant Murphy is and has been, both upon the filing of the subject Complaint and the filing of this petition for removal, a resident and citizen of Tennessee.

11.      Defendant Deida is and has been, both upon the filing of the subject Complaint and the filing of this petition for removal, a resident and citizen of Florida.

12.      Plaintiff's Complaint alleges violations of the NJLAD and NJFLA. The entire amount in controversy, while not specifically enumerated in Plaintiff's complaint, appears to contemplate an amount exceeding the sum or value of $75,000. As set forth in the Complaint, Plaintiff seeks compensatory damages, including back pay, front pay, punitive damages, and other economic losses.  Given the extensive relief requested by Plaintiff, particularly the requested award of punitive damages and attorneys' fees, Defendants submit that the amount in controversy exceeds the jurisdictional amount.

13.      Because there is complete diversity between the parties and the amount in controversy is in excess of $75,000, this Court has original jurisdiction over Plaintiff's claims by

virtue of diversity of citizenship and satisfaction of the amount in controversy requirement of 28 U.S.C. § 1332. This action is properly removable to federal court pursuant to 28 U.S.C. §§ 1332(a) and 1441(b).

14. Defendants submit this notice and petition without waiving any defenses to the claims asserted by Plaintiff or conceding that Plaintiff has pleaded claims upon which relief may be granted.

15. The Superior Court of New Jersey, Ocean County is located within the district of the United States District Court for the District of New Jersey. As such, venue is proper because the State Court Action lies within the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

16. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly give written notice of this Notice of Removal to Plaintiff's counsel of record and will file a copy of this Notice of Removal with the clerk of the state court in which the State Court Action is currently pending.

17. This Notice of Removal is filed in compliance with Rule 11 of the Federal Rules of Civil Procedure.

18. Defendants reserve all defenses currently available to them, including but not limited to, those under Rule 12(b) of the Federal Rules of Civil Procedure and do not waive said defenses by the filing of the instant Notice of Removal.

**WHEREFORE**, Defendants respectfully request that the within action, now pending in the Superior Court of New Jersey, Law Division, Ocean County, be removed to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Respectfully submitted,

**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, Pennsylvania 19102

By:    */s/ Timothy M. McCarthy*
Timothy M. McCarthy
Harrison H. Weimer
*Attorneys for Defendants*

Dated: November 18, 2025

5

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 11.2</u>

I, Timothy M. McCarthy, counsel for Defendants, certify that the matter in controversy is not subject to any other action pending in any court, or of any pending arbitration or administration proceeding.

Respectfully submitted,

**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, Pennsylvania 19102

By:   */s/ Timothy M. McCarthy*
Timothy M. McCarthy
Harrison H. Weimer
*Attorneys for Defendants*

Dated: November 18, 2025

4920-0516-4408, v. 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| NICOLE NELLIGAN, | : | Civil Action No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **CERTIFICATE OF SERVICE** |
| | : | |
| CROSS COUNTRY HEALTHCARE, INC.; | : | |
| CROSS COUNTRY STAFFING, INC.; | : | |
| LINDA MURPHY; LEYLA DEIDA; ABC | : | |
| COMPANIES 1-5 (fictitious names | : | |
| describing presently unidentified business | : | |
| entities); and JOHN DOES 1-5 (fictitious | : | |
| names of unidentified individuals), | : | |
| | | |
| Defendants. | | |

I hereby certify that a true and correct copy of Defendants' notice and petition for removal, notice of compliance with U.S.C. § 1446(d), civil cover sheet, diversity disclosure statement pursuant to Fed. R. Civ. P. 7.1, and this certificate of service were served upon counsel for Plaintiff Nicole Nelligan, Matthew A. Luber, Esq. and Natalie M. LaRosa, Esq., McComber McComber & Luber, P.C, 50 Lake Center Drive, Suite 400 Marlton, NJ 08053, by sending said documents, via electronic mail, on November 18, 2025.

Respectfully submitted,

JACKSON LEWIS P.C.

By: *s/ Timothy M. McCarthy*
Timothy M. McCarthy, Esq.
Harrison Weimer, Esq.
*ATTORNEYS FOR DEFENDANTS*

Dated:   November 18, 2025

4912-1034-4056, v. 1

# EXHIBIT A

Matthew A. Luber, Esq. – NJ ID No. 017302010
  mal@njlegal.com
Natalie M. LaRosa, Esq. – NJ ID No. 450942024
  nml@njlegal.com
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, New Jersey 08053
(856) 985-9800
*Attorneys for Plaintiff, Nicole Nelligan*

|  |  |
|---|---|
| NICOLE NELLIGAN,<br><br>          Plaintiff,<br><br>vs.<br><br>CROSS COUNTRY HEALTHCARE, INC.;<br>CROSS COUNTRY STAFFING, INC.; LINDA<br>MURPHY; LEYLA DEIDA; ABC<br>COMPANIES 1-5 (fictitious names describing<br>presently unidentified business entities); and<br>JOHN DOES 1-5 (fictitious names of presently<br>unidentified individuals),<br><br>          Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - OCEAN COUNTY<br><br>DOCKET NO.:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND<br>FOR TRIAL BY JURY** |

Plaintiff, Nicole Nelligan ("Plaintiff"), by way of Complaint against Defendants, Cross Country Healthcare, Inc. ("Defendant CC Healthcare"), Cross Country Staffing, Inc. ("Defendant CC Staffing"), and Defendant AP Staffing, Inc. ("Defendant AP") (collectively, "Corporate Defendants" or "Defendant Cross Country"), Linda Murphy ("Defendant Murphy"), and Leyla Deida ("Defendant Deida") (collectively, "Individual Defendants") (together with Corporate Defendants, "Defendants") alleges as follows:

## PARTIES

1.      Plaintiff is an individual residing in Manahawkin, New Jersey. At all times relevant hereto, Plaintiff was employed by Corporate Defendants as Delivery Manager.

2.      Defendant CC Healthcare is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 6551 Park of Commerce

1

Boulevard, Boca Raton, Florida. At all times relevant hereto, Defendant CC Healthcare was a single and/or joint "employer" of Plaintiff as defined under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, *et seq.* ("NJLAD").

3.      Defendant CC Staffing is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 6551 Park Commerce Boulevard, Boca Raton, Florida. At all times relevant hereto, Defendant CC Staffing was a single and/or joint "employer" of Plaintiff as defined under the NJLAD.

4.      At all relevant times, Corporate Defendants are Plaintiff's joint employers under New Jersey State law. Corporate Defendants had the power to hire and fire Plaintiff and control Plaintiff terms and conditions of employment. Corporate Defendants are therefore jointly and vicariously liable for Plaintiff's claims.

5.      In this regard, upon information and belief, their operations are interrelated and unified, and they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, common practices, and decisions with respect to policies and/or interrelated business goals.

6.      Defendant Murphy, at all times relevant hereto, is an individual employed as Group President at Corporate Defendants. This claim is brought against Defendant Murphy in her individual capacity and/or as an agent, servant, representative, and/or employee of Corporate Defendants.

7.      Defendant Deida, at all times relevant hereto, is an individual employed as Human Resources Business Partner at Corporate Defendants. This claim is brought against Defendant Deida in her individual capacity and/or as an agent, servant, representative, and/or employee of Corporate Defendants.

2

8.      Defendants ABC Corporations 1 through 5 are currently unidentified business entities who have acted in concert with Corporate Defendants, and/or currently unidentified business entities responsible for the creation and/or implementation of harassment or anti-retaliation policies of Corporate Defendants, and/or currently unidentified business entities who have liability for the damages suffered by Plaintiff under any theory advanced therein.

9.      Defendants John Does 1 through 5 are currently unidentified individuals who acted in concert with Defendants and/or currently unidentified individuals responsible for the creation and/or implementation of harassment or anti-retaliation policies of Corporate Defendants and are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

### **FACTS COMMON TO ALL CLAIMS**

10.      Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

11.      In 2015, Plaintiff was hired by AP Staffing as a Recruiter. Years later, in or around 2018, Corporate Defendants acquired AP Staffing and retained Plaintiff as an employee. Throughout the duration of her employment, Plaintiff worked remotely from her home in Manahawkin, New Jersey.

12.      Plaintiff was an outstanding employee, as evidenced by the fact that in June 2022, Plaintiff was promoted to Team Lead. Plaintiff continued to excel and was promoted to Delivery Manager in or around April 2023.

13.      As Delivery Manager, Plaintiff managed a team of employees who were responsible for sourcing and recruitment operations, client support, and account expansion.

3

14.     Plaintiff continued to excel in her role as Delivery Manager. Indeed, throughout the end of 2024, Kristian Carrico ("Mr. Carrico"), Corporate Defendants' Vice President of Search, regularly discussed promoting Plaintiff to a Director in 2025.

15.     In or around July 2024, Plaintiff learned she was pregnant. Plaintiff and her family were ecstatic.

16.     In or around October 2024, Plaintiff emailed Corporate Defendants' Human Resources ("HR") department to inform them of her pregnancy and inquire about her maternity leave.

17.     Kelly Pike ("Ms. Pike"), Corporate Defendants' HR Coordinator, informed Plaintiff that she was entitled to up to 26 weeks of maternity leave through the State of New Jersey. Ms. Pike informed Plaintiff that Corporate Defendants would pay Plaintiff up to five (5) weeks of maternity leave. Plaintiff informed Ms. Pike that her maternity leave would begin in or around March 2025.

18.     Shortly thereafter, Plaintiff informed her supervisor, Mr. Carrico of her pregnancy and upcoming maternity leave. Mr. Carrico was ecstatic for Plaintiff and her family.

19.     In or around January 2025, Defendant Murphy obtained approval from Corporate Defendants' Executive Team to hire more individuals to work on Plaintiff's team. Notably, Corporate Defendants approved a Director of Sales position, which had a base salary of $120,000. Defendant Murphy emailed Plaintiff and her team to share the good news, noting that the Executive Team was thrilled with Plaintiff's team's performance and it was a "no brainer" to them to agree to hire more team members.

4

20. Indeed, Plaintiff's team had outstanding profit margins and was the most profitable team in their division throughout 2024 up until the time Plaintiff took maternity leave in March 2025.

21. Shortly after Defendant Murphy announced that Plaintiff's team would be expanding, Plaintiff conducted her self-evaluated performance review. In her review, Plaintiff described how she drove revenue and improved her overall team in 2024.

22. At this time, Plaintiff formally asked for a promotion to Director. Plaintiff explained that she had already taken on many of the responsibilities of a Director, and Corporate Defendants' Executive Team had expressed a desire to invest in Plaintiff and her team.

23. Defendant Murphy responded to Plaintiff that she supported Plaintiff being promoted to Director, but Defendants were not permitted to promote employees or offer salary increases during the time that Corporate Defendants were possibly being acquired by another company.

24. Defendant Murphy's explanation was incorrect. Indeed, during this time, several employees were promoted and/or offered salary increases. Plaintiff, a pregnant woman, was told that this was not permissible. This alone demonstrates Defendants' discriminatory intent.

25. Plaintiff reiterated that she wanted to advance in her career at Corporate Defendants. Later, Defendant Murphy alleged that she would discuss Plaintiff's promotion and proposed salary increase with Human Resources ("HR"). Thereafter, Defendant Murphy informed Plaintiff that in order to earn a promotion, Plaintiff needed to complete "modules," which HR would send to her. Oddly, Defendant Murphy suggested that Plaintiff wait to start these modules until after she returned from maternity leave.

26. Plaintiff began her maternity leave on or around March 17, 2025.

5

27.     A couple of weeks later, on March 31, 2025, Mr. Carrico called Plaintiff to announce that Defendant Murphy decided to change Plaintiff's team's commission plan. Defendant Murphy's new commission plan negatively impacted high earners by significantly cutting commission rates. As Plaintiff's commission depended on her team's commission, Defendant Murphy's new plan negatively impacted Plaintiff's commission and earnings.

28.     Mr. Carrico offered Plaintiff a "retention bonus" of 1% of her team's revenue, paid monthly, if she continued her employment with Corporate Defendants. The proposed bonus was half of the commission Plaintiff would have been entitled to had she not taken maternity leave. Plaintiff's first bonus was to be paid in April 2025.

29.     On or around May 8, 2025, Ms. Pike emailed Plaintiff to ask when she was returning to work. Plaintiff responded that she decided to extend her maternity leave and would be returning to work on August 7, 2025.

30.     The next month, in June 2025, Plaintiff's team merged with Corporate Defendants' WSG Team.

31.     On or around June 27, 2025, Defendant Murphy emailed Plaintiff and her team to share that Corporate Defendants intended to eliminate duplicate roles. In this email, Defendant Murphy listed the new team leadership. Notably, Plaintiff was not mentioned in this email as a team leader.

32.     Weeks later, on or around July 11, 2025, Defendant Murphy emailed Plaintiff's team to share that Corporate Defendants were hiring new team members to staff the nine (9) new projects that the team would be taking on. Accordingly, Senior Director, Account Management, and Project Manager roles were posted.

33. Plaintiff was excited to return to work after her leave and emailed Ms. Pike on July 29, 2025 to ask if she needed to complete any tasks prior to returning from maternity leave.

34. Ms. Pike confirmed that Plaintiff's return to work date was August 7, 2025 and added Defendant Murphy to the email. Defendant Murphy wrote that she was looking forward to seeing Plaintiff soon.

35. On August 6, 2025, one day before Plaintiff was supposed to return from maternity leave, Defendant Murphy and Defendant Deida called Plaintiff. Shockingly, Individual Defendants terminated Plaintiff's employment.

36. Defendant Murphy alleged that once Plaintiff went on maternity leave, her team began struggling financially and Corporate Defendants eliminated Plaintiff's position because they could no longer support "non-producing roles."

37. Plaintiff was confused, as less than a month earlier, Defendant Murphy announced that Plaintiff's team was hiring three new employees to staff nine new projects. Plaintiff asked Defendant Murphy to clarify whether she is being terminated or if Defendants are changing Plaintiff's role.

38. Defendant Murphy confirmed that Plaintiff was being terminated and that Defendant Deida would explain Plaintiff's severance package.

39. Shockingly, Defendant Deida informed Plaintiff that she would be paid for August 7, 2025 and August 8, 2025, but would be eligible for unemployment benefits. Defendant Deida informed Plaintiff that she was welcome to apply for other roles at Corporate Defendants.

40. That same day, Defendants removed Plaintiff's access to her computer.

41. Defendants' reasons for terminating Plaintiff's employment are nothing more than a pretextual excuse designed to conceal their discriminatory and retaliatory animus.

7

42.    Indeed, Defendants admit that Plaintiff's team's performance dropped only after Plaintiff left for maternity leave.

43.    Further, the fact that Defendants are hiring for several roles, both "producing" and "non-producing," confirms that Defendants are not experiencing budgetary or financial concerns.

44.    Finally, the fact that Defendants terminated Plaintiff while she was out on maternity leave confirms that Defendants' explanation is nothing more than a pretextual excuse designed to conceal the fact that Defendants wanted to terminate Plaintiff due to her pregnancy and/or exercise of her right to take maternity leave.

45.    Defendants did not treat non-pregnant employees in such a manner.

46.    Corporate Defendants, at all times relevant hereto, are responsible as a matter of law for the acts and/or omissions of their responsible administrators, managers, supervisors, and employees including, but not limited to, Individual Defendants.

**COUNT ONE**
**NJLAD – DISPARATE TREATMENT & DISCRIMINATION**
**DUE TO GENDER, SEX, and/or PREGNANCY**

47.    Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

48.    Plaintiff was subjected to discrimination on account of her gender, sex, and pregnancy.

49.    The above-described conduct would not have occurred but for Plaintiff's gender, sex, and pregnancy.

50.    At all relevant times, Plaintiff was qualified for her position. Plaintiff is a female who became pregnant. Plaintiff intended to take maternity leave and informed Defendants of same.

51.    Plaintiff was subjected to disparate treatment because of her pregnancy.

8

52.    Defendants did not have an effective anti-discrimination policy in place, Defendants have not maintained an anti-harassment policy that is current and effective, and Defendants' anti-discrimination policy existed in name only.

53.    Defendants did not maintain useful formal and informal complaint structures for victims of discrimination.

54.    Defendants did not properly train their supervisors and/or employees on the subject of discrimination and retaliation.

55.    Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

56.    Defendants did not have a commitment from the highest levels of management that discrimination and retaliation will not be tolerated.

57.    As a result of the above discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and experiences significant economic damages.

58.    In 2014, the NJLAD was amended to include pregnancy as a protected class of persons. N.J.S.A. 10:5-12(a). This amendment not only provides that an employer cannot discriminate against an employee on the basis of her pregnancy, but also requires an employer to provide reasonable accommodations to pregnant women:

> That pregnant women are vulnerable to discrimination in the workplace in New Jersey, as indicated in reports that women who request an accommodation that will allow them to maintain a healthy pregnancy, or who need a reasonable accommodation while recovering from childbirth, are being removed from their positions, placed on unpaid leave, or fired;
>
> It is the intent of the Legislature to combat this form of discrimination by requiring employers to provide reasonable accommodations to pregnant women and those who suffer medical conditions related to pregnancy and childbirth, such as bathroom breaks, breaks for increased water intake, periodic rest, assistance

> with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work; and
>
> It is not the intent of the Legislature to require such accommodations if their provision would cause an undue hardship in the conduct of an employer's business.

N.J.S.A. 10:5-3.1.

59. As the employer and/or supervisor of the Plaintiff, Corporate Defendants are vicariously, strictly, and/or directly liable to the Plaintiff pursuant to the New Jersey Law Against Discrimination ("NJLAD"), *N.J.S.A.* 10:5-1, *et seq.,* in that the affirmative acts of discrimination committed by Individual Defendant occurred within the scope of his employment; allowing Individual Defendant to control the day-to-day working environment; and/or Defendants were deliberately indifferent, reckless, negligent and/or tacitly approved the hostile work environment; and/or Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same despite the foreseeability of discrimination in the workplace; and/or by having actual knowledge of the discrimination of Plaintiff and failing to promptly and effectively act to stop it.

60. Corporate Defendants aided, abetted, incited, compelled, and/or coerced, and/or attempted to aid, abet, incite, compel and/or coerce Individual Defendant to commit acts and omissions that were in violation of the NJLAD by committing affirmatively discriminatory and retaliatory acts towards Plaintiff in violation of its supervisory duties to halt or prevent harassment, subjecting Defendants to liability to Plaintiff pursuant to *N.J.S.A.* 10:5-12(e).

61. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

10

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.  Reinstatement of employment and all benefits;
B.  Back pay and benefits;
C.  Front pay and benefits;
D.  Compensatory damages;
E.  Consequential damages;
F.  Reinstatement;
G.  Punitive damages;
H.  Prejudgment interest and enhancements to off-set negative tax consequences;
I.  Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
J.  Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
K.  Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
L.  Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
M.  Ordering Defendants to undergo anti-discrimination training;
N.  Ordering Defendants to undergo anti-retaliation training;
O.  Ordering Defendants to undergo anti-harassment training;
P.  Ordering Defendants to undergo workplace civility training;
Q.  Ordering Defendants to undergo bystander intervention training;
R.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
S.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
T.  Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
U.  Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
V.  Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
W.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

11

X.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.     Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.     Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO
## NJLAD – RETALIATION/IMPROPER REPRISAL

62.     Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

63.     Defendants took retaliatory action against Plaintiff by terminating Plaintiff's employment after she exercised her right to take maternity leave.

64.     Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliation in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

65.     As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

A.     Reinstatement of employment and all benefits;
B.     Back pay and benefits;
C.     Front pay and benefits;
D.     Compensatory damages;
E.     Consequential damages;
F.     Reinstatement;
G.     Punitive damages;
H.     Prejudgment interest and enhancements to off-set negative tax consequences;
I.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by

Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

J.      Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;

K.      Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

L.      Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;

M.      Ordering Defendants to undergo anti-discrimination training;

N.      Ordering Defendants to undergo anti-retaliation training;

O.      Ordering Defendants to undergo anti-harassment training;

P.      Ordering Defendants to undergo workplace civility training;

Q.      Ordering Defendants to undergo bystander intervention training;

R.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

S.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

T.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;

U.      Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;

V.      Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;

W.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

X.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;

Y.      Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

Z.      Such other relief as may be available and which the Court deems just and equitable.

### COUNT THREE
### VIOLATION OF THE NEW JERSEY FAMILY LEAVE ACT - INTERFERENCE AND RETALIATION

66.      Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

67.      During all times relevant to this complaint, Corporate Defendants employed thirty (30) or more employees during the twenty (20) or more calendar workweeks in 2025.

13

68.     During all times relevant to this complaint, Plaintiff was an "employee" under the NJFLA as she worked for Corporate Defendants for more than twelve (12) months and for more than one thousand (1,000) hours in the twelve (12) months prior to March 2025, when Plaintiff intended to take her maternity leave.

69.     Plaintiff provided advanced notice to Defendants of her intention to take maternity leave.

70.     Defendants interfered with Plaintiff's exercise of her right to Family Leave.

71.     In violation of the NJFLA, Defendants discriminated against Plaintiff for exercising her right to Family Leave.

72.     As a direct result of Plaintiff's request to take leave, the Defendants took retaliatory action against Plaintiff and terminated her employment.

73.     As a proximate result of the aforementioned acts, Plaintiff has sustained damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJFLA, punitive damages, pre- and post-judgment interest, attorney's fees and costs of suit, and for such other relief that the Court deems equitable and just.

## **<u>DEMAND FOR DISCOVERY OF INSURANCE COVERAGE</u>**

Pursuant to <u>Rule</u> 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including,

14

but not limited to, any and all declaration sheets.  This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Nicole Nelligan*


By: /s/  Matthew A. Luber
Matthew A. Luber, Esquire

Dated:   September 25, 2025


## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Matthew A. Luber, Esquire is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings involving this matter with respect to this matter and no other parties need to be joined at this time.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.
*Attorneys for Plaintiff, Nicole Nelligan*


By: /s/  Matthew A. Luber
Matthew A. Luber, Esquire

Dated:   September 25, 2025


15

# Civil Case Information Statement

## Case Details: OCEAN | Civil Part Docket# L-002625-25

**Case Caption:** NELLIGAN NICOLE  VS CROSS COUNTRY HEALTH CARE, IN

**Case Initiation Date:** 09/25/2025

**Attorney Name:** MATTHEW ALLEN LUBER

**Firm Name:** MCOMBER MCOMBER & LUBER, PC

**Address:** 54 SHREWSBURY AVE

RED BANK NJ 07701

**Phone:** 7328426500

**Name of Party:** PLAINTIFF : Nelligan, Nicole

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Nicole Nelligan? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
  **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
  **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/25/2025

Dated

/s/ MATTHEW ALLEN LUBER

Signed

# EXHIBIT B

Matthew A. Luber, Esq. – NJ ID No. 017302010
  mal@njlegal.com
Natalie M. LaRosa, Esq. – NJ ID No. 450942024
  nml@njlegal.com
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, New Jersey 08053
(856) 985-9800
*Attorneys for Plaintiff, Nicole Nelligan*

| | |
|---|---|
| NICOLE NELLIGAN,<br><br>Plaintiff,<br><br>vs.<br><br>CROSS COUNTRY HEALTHCARE, INC.; CROSS COUNTRY STAFFING, INC.; LINDA MURPHY; LEYLA DEIDA; ABC COMPANIES 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names of presently unidentified individuals),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION - OCEAN COUNTY<br><br>DOCKET NO.: OCN-L-2625-25<br><br>Civil Action<br><br>**ACKNOWLEDGMENT OF SERVICE** |

The undersigned hereby acknowledges service of the Complaint and Demand for Trial by Jury and

Discovery Demands in the above matter on behalf of Defendants, Cross Country Healthcare, Inc.,

Cross Country Staffing, Inc., Linda Murphy, and Leyla Deida.


JACKSON LEWIS P.C.
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
*Attorneys for Defendants*

By: _____
        Timothy M. McCarthy

Dated:   October 22, 2025